11/6/2017 2:56 PM
17CV48393

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| CHRISTOPHER LINGGI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TE CONNECTIVITY CORPORATION,<br><br>　　　　Defendant | CASE NO.:<br><br>**COMPLAINT**<br>(Whistleblower Retaliation – ORS 659A.199; Retaliation – ORS 659A.030; Wrongful Discharge in Violation of Public Policy)<br><br>Prayer: $400,000<br>ORS 21.160(1)(c)<br>(Claims not subject to mandatory arbitration)<br><br>**Jury Trial Requested** |

## INTRODUCTION

1.

Plaintiff Christopher Linggi brings this action alleging that Defendant TE Connectivity Corporation engaged in unlawful employment practices against Plaintiff by terminating him and retaliating against him for engaging in lawfully protected activity, including opposing and making complaints of unlawful activity. Plaintiff seeks economic and punitive damages, and equitable relief.

## JURISDICTION & VENUE

2.

Plaintiff Christopher Linggi ("Linggi") is, and at all material times was, a resident of the State of Oregon.

PAGE - 1    COMPLAINT

3.

Defendant, TE Connectivity Corporation ("TEC"), is a Pennsylvania corporation with its principal place of business in Middletown, Oregon and at all material times hereto was a Foreign Business Corporation doing business in the State of Oregon, including in Multnomah County.

4.

At all material times, TEC was Linggi's employer and conducted regular and sustained business activities in Oregon counties.

## FACTUAL ALLEGATIONS

5.

Linggi worked for TEC from April 2012 to April 2015 as a Manufacturing Engineer. He was promoted twice during that period and when he resigned in April of 2015, he was Manager 1 of Manufacturing Engineering.

6.

In or about November 2015, TEC rehired Linggi as a Quality Systems Manager. Up until at least September 2016, Linggi provided valuable contributions and received no negative performance feedback. He met or exceeded expectations regarding all of his work performance objectives.

7.

As a registered medical device and component manufacturer with the Food & Drug Administration (FDA), TEC is subject to Quality Systems Inspections by the FDA. On approximately September 8, 2016 TEC's Quality Department received notice that the FDA would be conducting an inspection within the next few days. Joan McCabe, Vice President Quality & Regulatory, led TEC's response to the FDA inspection. TEC began preparing for the inspection on September 10, 2015.

8.

Linggi participated in the inspection by preparing and organizing documents for review by the FDA inspector. In addition to McCabe and Linggi, approximately 10 personnel from the Quality Department and management with executive responsibility at the TEC facility participated in TEC's response to the inspection. The physical inspection occurred between September 13 to 19, 2016.

9.

During the preparation for and continuing during the physical inspection, Linggi developed concerns that TEC was engaging in unlawful conduct, misleading the FDA inspector and committing what he reasonably believed was fraud.

10.

For example, on or about September 15, 2016, McCabe demanded that TEC personnel modify a TEC record to conceal the date that the work was done by falsifying the supplier records required by purchasing control regulation. The original records had not been completed, or reviewed and approved, prior to designating the supplier as an approved supplier. At the time of the FDA inspection the supplier file was identified as not being complete before being shared with the inspector (and therefore not in compliance with GMP and established company procedure). McCabe instructed a Quality personnel to complete the form and to not annotate the true date of completion. Linggi refused to complete the form. The adulterated record was then presented to the FDA inspector. Linggi reasonably believed this practice was unlawful and verbally opposed this practice to McCabe and reported his concern to his supervisor, Mark Andrews. TEC also misled the FDA inspector regarding devices made by TEC that Linggi believes are subject to Unique Device Identifier (UDI) requirements and in doing so, engaged in unlawful conduct. TEC and McCabe engaged in additional conduct that Linggi reasonably believed was unlawful and which he opposed.

PAGE - 3     COMPLAINT

11.

Linggi reported his concerns that TEC was engaging in unlawful behavior during the inspection to a Legal Contract Analyst at TEC.

12.

In addition, throughout the inspection, Linggi made his concerns about the unlawful behavior known to McCabe, Andrews, and other employees. He refused to participate in any practices that he reasonably believed were unlawful. In verbally opposing these practices and making his concerns known, he disclosed his good faith belief that TEC was engaging in violations of a state, federal or local law.

13.

In or about October 2016, after the completion of the FDA inspection, Linggi again reported TEC's unlawful conduct during the FDA inspection to a Legal Contract Analyst at TEC. The Legal Contract Analyst reported his concerns to a General Counsel at TEC, who contacted Linggi about them and submitted a complaint.

14.

As a result of his opposition to, reporting and disclosure of the unlawful activity, TEC subjected Linggi to adverse employment actions, including denying him raises, giving him unjustified negative performance feedback, and terminating him. In addition, immediately after the FDA inspection and Linggi's opposition and report of the unlawful practices, McCabe's and Andrews' attitude toward Linggi changed. Andrews gave Linggi negative feedback and asked Linggi to consider moving positions.

15.

In or about December 2016, Linggi met with Andrews for his performance review. During that review Linggi became concerned that he was being subjected to retaliation for opposing and reporting unlawful activity during the FDA inspection. After his review, Linggi

called TEC's internal "concernline" to report the retaliation. Days later, before the concernline complaint could be investigated, Linggi had a seizure while at work, in part due to the stress and anxiety he suffered as a result of TEC's retaliation.

16.

On December 6, 2016, Linggi went on an approved medical leave of absence. Before he returned to work, on or about March 17, 2017, Linggi received written notice that he was terminated because TEC was eliminating his position. On information and belief, TEC's elimination of his position was pretextual and Linggi was terminated due to his reporting of and opposition to TEC's unlawful acts.

**FIRST CLAIM FOR RELIEF**
**(Whistleblower Retaliation – ORS 659A.199)**

17.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

18.

Defendant's behavior as alleged above violated ORS 659A.199 because TEC retaliated against Plaintiff in the terms and conditions of his employment by denying him raises, giving him unjustified negative performance feedback, and terminating him because he opposed and reported in good faith information he believed to be illegal conduct.

19.

Defendant's violation of ORS 659A.199 directly and proximately caused Plaintiff economic loss and emotional harm of $400,000, as to be decided by the jury.

20.

Defendant acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the

health, safety and welfare of others. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS §§ 31.725 and 31.730.

21.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover actual damages, punitive damages, reasonable attorney fees, and costs.

**SECOND CLAIM FOR RELIEF**
**(Retaliation -- ORS 659A.030(1)(f))**

22.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

23.

Defendant's behavior as alleged above violated ORS 659A.030(1)(f) because TEC retaliated against Plaintiff in the terms and conditions of his employment by denying him raises, giving him unjustified negative performance feedback, and terminating him because he opposed and reported in good faith information he believed to be illegal behavior.

24.

Defendant's violation of ORS 659A.030(1)(f) directly and proximately caused Plaintiff economic loss and emotional harm of $400,000, as to be decided by the jury.

25.

Defendant's violation of ORS 659A.030(1)(f) directly and proximately caused Plaintiff economic loss and emotional harm as alleged above, in amounts to be decided by the jury.

26.

Defendant acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety and welfare of others. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS §§ 31.725 and 31.730.

ALBIES & STARK
ATTORNEYS AT LAW
65 SW YAMHILL STREET, #200, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

27.

Pursuant to ORS 20.107 and ORS 659A.885, Plaintiff is entitled to recover actual damages, punitive damages, reasonable attorney fees, and costs.

### THIRD CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of Public Policy)

28.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

29.

At all materials times, the public policy of Oregon prohibited an employer from retaliating against an employee for opposing or reporting in good faith what he believed to be illegal behavior and policies in violation of state and federal law.

30.

This public policy is embodied in the common law, statutes, and regulations of the State of Oregon and the United States including, but not limited to ORS 659A.030, ORS 659A.199, ORS 659A.230, and ORS 659A.203.

31.

Defendant, acting through their agents and employees, violated the above public policies by retaliating against Plaintiff for opposing and making good faith complaints about unlawful behavior.

32.

Defendant's discharge of Plaintiff was made in retaliation for his pursuit and exercise of his rights, which are of important public interest.

33.

Defendant's wrongful retaliation and discharge directly and proximately caused Plaintiff economic loss and emotional harm of $400,000, as to be decided by the jury.

ALBIES & STARK
ATTORNEYS AT LAW
65 SW YAMHILL STREET, #200, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

34.

Defendant acted with malice and/or demonstrated a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety and welfare of others. Accordingly, Plaintiff reserves the right to seek punitive damages pursuant to ORS §§ 31.725 and 31.730.

35.

As a result of Defendant's behavior as alleged above, Plaintiff is entitled to recover actual damages, punitive damages, and pursuant to ORS 20.107, reasonable attorney fees, and costs.

WHEREFORE, Plaintiff prays for judgment from Defendant as follows:

(a) For a permanent injunction prohibiting Defendant from retaliating against other employees who have reported illegal behavior;

(b) Actual damages including economic losses and emotional harm caused by Defendant's illegal retaliation and wrongful termination, in amounts to be decided by the jury;

(c) Plaintiff reserves the right to seek punitive damages pursuant to ORS §§ 31.725 and 31.730;

(d) Reasonable attorney fees and costs in an amount to be decided by the Court after trial;

(e) Pre- and post-judgment interest in accordance with law; and

(f) Any other equitable relief this Court may determine to be fair and just.

DATED this 6th day of November, 2017.

s/Whitney Stark.
Whitney B. Stark, OSB No. 090350
whitney@albiesstark.com
J. Ashlee Albies, OSB No. 051846
ashlee@albiesstark.com

*Attorneys for Plaintiff*